Sean K. McElenney, Esq. (#016987)
Gregory B. Iannelli, Esq. (#026549)
**BRYAN CAVE LEIGHTON PAISNER LLP**
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
Internet: skmcelenney@bclplaw.com
gregory.iannelli@bclplaw.com

Attorneys for Defendant CitiMortgage, Inc.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Marshall Gross,<br><br>Plaintiff,<br><br>vs.<br><br>CitiMortgage, Inc.; Equifax Information Services, LLC; Experian Information Solutions, Inc.; and TransUnion, LLC,<br><br>Defendants. | Case No. 2:18-cv-02103-ROS<br><br>**DEFENDANT CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Roslyn O. Silver |

The Fair Credit Reporting Act ("FCRA") requires Defendant CitiMortgage Inc. ("CitiMortgage") to conduct a reasonable investigation of disputes that Plaintiff filed with the Credit Agencies in 2018. *Gorman v. Wolpoff & Abramson LLP*, 584 F.3d 1147 (9th Cir. 2009). Plaintiff alleges that CitiMortgage violated this obligation and is therefore liable for economic and emotional harm arising from alleged inaccuracies in his credit report. Plaintiff is wrong on all counts.

Plaintiff first alleges that the CitiMortgage report is inaccurate because the reported debt ceased to exist as a matter of law, under Arizona's anti-deficiency statute, after the real property securing the debt was sold at a trustee sale. The FCRA obligation to conduct a reasonable investigation does not extend to legal disputes. *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010); *Herrell v. Chase Bank USA, N.A.*, 218 F. Supp. 3d 788, 792-93 (E.D. Wis. 2016); *Van Veen v. Equifax Information*, 844 F. Supp. 2d 599, 608

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

(E.D. Penn. 2012). In each of these cases, the court entered summary judgment for the creditor for lack of any obligation to investigate the debtor's legal disputes.

Nevertheless, Plaintiff's legal challenge to the existence of his debt is without merit. Courts across the country have rejected Plaintiff's theory. *Fireman's Fund Mortgage Corp. v. Allstate Ins. Co.*, 838 P.2d 790, 794 (Alaska 1992); *United Bank of Bismarck v. Glatt*, 420 N.W.2d 743, 745 (N.D. 1988); *Metro. Savings & Loan Ass'n v. Adams*, 356 N.W.2d 415, 421-22 (Minn. Ct. App. 1984); *Lange v. Aver*, 241 Cal. App. 2d 793, 799 (Cal. Ct. App. 1966); *Light v. Granatell*, 410 A.2d 266, 269 (N.J. Super. Ct. App. Div. 1979). CitiMortgage did nothing unlawful by reporting Plaintiff's admittedly-unpaid debt after the trustee sale.

Plaintiff alternatively asserts the more nuanced allegation that his report is accurate, but misleading, because it does not reflect that Plaintiff enjoys anti-deficiency protection. The anti-deficiency statute merely limits the creditor's ability to collect from the debtor's personal property. A.R.S. § 33-814(G). FCRA does not require creditors to educate the world about the law. Each state has a myriad of consumer protection, exemption, and other laws that limit the remedies available to a creditor. Everyone is presumed to know these laws. *Flores v. County of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014). A credit report does not mislead anybody by making *no representation* about the remedies available to the creditor to collect the subject debt.

Finally, Plaintiff lacks evidence of any economic or emotional harm caused by the alleged violation. To the contrary, the undisputed evidence shows that the CitiMortgage report was *not considered* in the only credit decision for which Plaintiff seeks damages in this case. Plaintiff has no evidence that any person was ever deceived or misled by the CitiMortgage report. His claim for damages, of any kind, is wholly speculative and conjectural, particularly in light of the undisputed fact that his credit report is replete with derogatory information for which he cannot blame CitiMortgage. For these and the other reasons set forth more specifically below, CitiMortgage is entitled to summary judgment.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

# MEMORANDUM OF POINTS AND AUTHORITIES

## Background

On January 29, 2007, Plaintiff "took out two mortgage loans" to purchase real property in Queen Creek ("Property"). [Separate Statement of Facts (12/16/19) ("SOF") ¶¶ 1, 2] The junior loan was in the original principal amount of $40,474, and was assigned to CitiMortgage on March 13, 2007 ("Second Loan" or "debt"). [SOF ¶¶ 3, 4] Plaintiff made no payments on the Second Loan after it was assigned to CitiMortgage. [SOF ¶ 5]

On or about June 13, 2013, the senior lender sold the Property to a third party pursuant to the trustee's power of sale ("Trustee Sale"). [SOF ¶ 6] CitiMortgage, on the other hand, has never foreclosed the Second Loan. [SOF ¶ 7] CitiMortgage did not acquire the Property or any money as a result of the senior lender's Trustee Sale. [SOF ¶ 8]

In May 2018, Plaintiff filed a dispute with Equifax, Experian, and Trans Union (the "Credit Agencies"), stating that he did not owe the debt because of the senior foreclosure. [SOF ¶ 9] Following that dispute, CitiMortgage reported that the debt had been written off, and that the account had been closed with a $0 balance, and further notated, "account information disputed by consumer." [SOF ¶ 10] CitiMortgage also coded the account with an "XB" marker, indicating that the account was in dispute and should not affect Plaintiff's credit score. [SOF ¶ 11]

Plaintiff does not dispute that the information reported by CitiMortgage is factually correct. [SOF ¶ 12]

## Argument

### I. CITIMORTGAGE'S REPORTING WAS ACCURATE AND NOT MISLEADING.

Plaintiff has two liability theories. The first is that CitiMortgage's reporting was patently inaccurate because the Trustee Sale extinguished his debt to CitiMortgage under A.R.S. § 33-814(G) ("Anti-Deficiency Statute"). He alternatively contends that the report was misleading because it did not disclose that the Anti-Deficiency Statute precludes a personal lawsuit against Plaintiff to collect the debt. Neither theory has merit.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

**A. The Trustee Sale Did Not Extinguish Plaintiff's Debt.**

"Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *In re Transcon Lines*, 58 F.3d 1432, 1437 (9th Cir. 1995) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)). The plain words of the Anti-Deficiency Statute demonstrate the Arizona legislature's intent that an "indebtedness" can exist after a trustee sale:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, *no action may be maintained* to *recover any difference between the amount obtained by sale and the amount of the indebtedness* and any interest, costs and expenses.

A.R.S. § 33-814(G) (emphasis added). If the "indebtedness" were extinguished in the sale, then no "difference" between "the amount obtained by sale" and "the amount of the indebtedness" could exist, but the statute plainly recognizes that a deficiency can exist, disproving Plaintiff's theory. *See Fireman's Fund Mortgage Corp. v. Allstate Ins. Co.*, 838 P.2d 790, 794 (Alaska 1992) ("plain language" of anti-deficiency statute "supports the conclusion that the loan obligation is not completely extinguished as a matter of law," because it "contemplates the survival of a loan 'obligation' following the sale").

Further, "[w]here the legislature has used a particular term in one place in a statute and has excluded it in another place in the same statute, a court should not read that term into the provision from which the legislature has chosen to omit it." *Arizona Dep't of Revenue v. General Motors Acceptance Corp.*, 188 Ariz. 441, 445, 937 P.2d 363, 367 (Ct. App. 1996). Under A.R.S. § 33-814(A), deficiency actions not involving a personal residence are permissible if filed within 90 days of the sale. The statute provides:

> If no action is maintained for a deficiency judgment within the time period prescribed in subsections A and B of this section, the proceeds of the sale, regardless of amount, *shall be deemed to be in full satisfaction of the obligation* and *no right* to recover a deficiency in any action *shall exist.*

A.R.S. § 33-814(D) (emphasis added). In contrast, the Anti-Deficiency Statute provides only that "no action may be maintained" to recover a deficiency. A.R.S. § 33-814(G). The only other Arizona statute that uses the words "no action may be maintained" is a statute of



601342762.3

limitations. *See* A.R.S. § 12-821.01(A); *Dube v. Desai*, 218 Ariz. 362, 186 P.3d 587 (Ct. App. 2008). A statute that bars the maintenance of an action differs materially from a statute providing that "no right to recover . . . shall exist" because the proceeds are "deemed to be in full satisfaction of the obligation."

For example, in *De Anza Land & Leisure Corp. v. Raineri*, 137 Ariz. 262, 669 P.2d 1339 (Ct. App. 1983), the six-year statute of limitations had run on a promissory note secured by a mortgage. The Court of Appeals held that, under the statute of limitations, "the debt is not extinguished; rather, the remedy for an action on the debt is merely barred." *Id.* at 266, 669 P.2d at 1343. Similarly, more than 100 years ago, the Arizona Supreme Court held that a plaintiff wishing to have a mortgage cancelled must pay the debt secured by the mortgage, though collection of the debt was barred by limitations. *Provident Mutual Building & Loan Ass'n v. Schwertner*, 15 Ariz. 517, 140 P. 495 (1914). The court held:

> Outlawry, under the statute of limitation, affects the remedy and not the right. It does not extinguish or satisfy the debt; it only prevents a recovery when properly invoked by the debtor. It is a shield and not a sword. It can be used for defense, but not for assault.

*Id.* at 518, 140 P. at 496. Likewise, that the Anti-Deficiency Statute bars the maintenance of an action "does not extinguish or satisfy the debt." When the legislature intended to extinguish debt post-foreclosure, it did so expressly by providing that the foreclosure proceeds "shall be deemed to be in full satisfaction of the obligation." A.R.S. § 33-814(D). The Court may not read into the Anti-Deficiency Statute what the legislature "has chosen to omit." *General Motors*, 188 Ariz. at 445, 937 P.2d at 367.

This Court has implicitly held that a trustee sale does not extinguish the borrower's debt. In *Pfeiffer v. Morgan Stanley Credit Corp.*, 922 F. Supp. 2d 828 (D. Ariz. 2012), this Court held that the Anti-Deficiency Statute would not preclude the lender from taking possession of a brokerage account given as security in addition to the house. *Id.* at 833. If the debt were extinguished, this holding would be indefensible, because agreements to pledge collateral are merely incidental to the debt, and cannot be enforced where no debt exists. *Hill v. Favour*, 52 Ariz. 561, 568, 84 P.2d 575, 568 (1938). *Pfeiffer* correctly

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

recognizes the distinction between *right* and *remedy* in the Anti-Deficiency Statute, as do holdings from courts across the country. *See United Bank of Bismarck v. Glatt*, 420 N.W.2d 743, 745 (N.D. 1988) (anti-deficiency statute did not "satisfy" or "extinguish" debt after foreclosure); *Metro. Savings & Loan Ass'n v. Adams*, 356 N.W.2d 415, 421-22 (Minn. Ct. App. 1984) (anti-deficiency statute did not bar action to foreclose additional security interests after foreclosure of house); *Lange v. Aver*, 241 Cal. App. 2d 793, 799 (Cal. Ct. App. 1966) (anti-deficiency statute did not "discharge" the borrower's debt); *Fireman's Fund*, 838 P.2d at 79 (anti-deficiency statute "does not operate to extinguish a secured debt upon foreclosure as a matter of law"); *Light v. Granatell*, 410 A.2d 266, 269 (N.J. Super. Ct. App. Div. 1979) (anti-deficiency statute "did not extinguish the right to a deficiency but merely the remedy").[1]

The distinction between *right* and *remedy* that anti-deficiency cases uniformly recognize is a practical, not merely theoretical, difference. The continued existence of the *right* to payment means that a creditor can collect from sources other than the debtor's personal assets, as recognized in cases like *Pfeiffer*, *Glatt*, and *Metro Savings*. Another consequence of the *right* to payment is that a debtor may be sued to collect the debt if he owns property in a jurisdiction that does not have an anti-deficiency statute. *Light*, 410 A.2d at 269. Thus, precisely stated, the Anti-Deficiency Statute means only that Plaintiff cannot be personally sued in Arizona to collect the debt from his Arizona assets. The statute eliminates only one *remedy*, not the underlying debt obligation.

---

[1] The only Arizona case, that CitiMortgage could locate, which directly addresses whether the Anti-Deficiency Statute extinguishes debt, is an unpublished case from this Court, in which Judge Snow held: "The statute precludes a deficiency judgment but does not extinguish the debt." *Hansford v. JP Morgan Chase Bank, N.A.*, No. CV-14-01380-PHX-GMS, 2014 WL 11515621, at *2 (D. Ariz. Dec. 11, 2014). The Arizona Court of Appeals has addressed the related question whether a trustee sale under a senior deed of trust extinguishes the junior debt, holding that it does not. *Long v. Corbet*, 181 Ariz. 153, 157, 888 P.2d 1340, 1344 (Ct. App. 1995) ("Once the creditor senior to Long sold the deed of trust property at a trustee's sale, Long's deed of trust was extinguished, although the debt secured by the deed of trust given to Long was not").

The post-foreclosure existence of the debt defeats Plaintiff's first liability theory under FCRA. Courts "uniformly hold that where a debt exists, notwithstanding limitations on the creditor's ability to collect, the creditor may lawfully furnish accurate information about the account to the CRAs." *Herrell v. Chase Bank USA, N.A.*, 218 F. Supp. 3d 788, 792-93 (E.D. Wis. 2016) (granting furnisher's motion for summary judgment). For instance, in *Dacumos v. Toyota Motor Credit Corp.*, 287 F. Supp. 3d 1152 (W.D. Wash. 2017), the plaintiff alleged that his creditor should have reported a $0 balance because the creditor filed and dismissed with prejudice a collection action, operating as an adjudication that nothing was owed. *Id.* at 1155-56. The court rejected the plaintiff's FCRA claim:

> There remains, finally, the question whether the absence of a judicial remedy operates to extinguish the underlying debt obligation for all purposes. Although the question appears to be one of first impression, courts have considered the analogous context of a debt that is time-barred by a statute of limitations. [citations omitted] Applying this reasoning in the present context, the Court holds that the state court dismissal—though it may deprive Capital One of a judicial mechanism for recovering the loan—does not erase Dawe's underlying indebtedness.

*Id.* at 1156 (quoting *Dawe v. Capital One Bank*, 456 F. Supp. 2d 236, 242 (D. Mass 2006)). *See also Hansford*, 2014 WL 11515621, at *2 (dismissing FCRA claim; anti-deficiency statutes "were not created to prevent future potential creditors from being made aware of Plaintiff's default history"); *Abdelfattah v. Carrington Mortgage Servs. LLC*, No. C–12–04656–RMW, 2013 WL 495358 at *3 (N.D. Cal. Feb. 7, 2013) (dismissing FCRA claim; California anti-deficiency statute "does not preclude the reporting of a deficiency"); *Prianto v. Experian Information Solutions, Inc.*, No. 13–cv–03461–TEH, 2014 WL 3381578 at *3-5 (N.D. Cal. July 10, 2014) (same). Because the absence of a particular judicial remedy does not erase the debt, Plaintiff's first liability theory under FCRA fails as a matter of law.

**B. CitiMortgage Has No Duty Under FCRA To Investigate Legal Disputes.**

Plaintiff's first liability theory also fails, because the allegation that the Anti-Deficiency Statute extinguished Plaintiff's debt was a *legal dispute* that CitiMortgage had no duty under FCRA to investigate. Rather, to investigate Plaintiff's dispute, CitiMortgage reviewed its transaction history, prior case notes, system notes, file notes, public records,

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

and imaged loan documents (such as the promissory note and mortgage). [SOF ¶ 13] CitiMortgage "looked through [the transaction history] to see how the payments were and how the end result was, which was a charge off." [SOF ¶ 14] CitiMortgage verified that Plaintiff had an outstanding balance with CitiMortgage. [SOF ¶ 15]

Unsurprisingly, the CitiMortgage investigation did not reveal any "documentation showing that he didn't owe that balance or have a balance with Citi." [SOF ¶ 16] There was "nothing showing that that balance had been paid off." [SOF ¶ 17] Indeed, CitiMortgage was aware from its file notes about the previous foreclosure by a different lender. [SOF ¶ 18] Thus, CitiMortgage uncovered all factual information that a reasonable investigation would be expected to uncover, and reached the correct factual result—Plaintiff's loan was never paid off or discharged.

Plaintiff's liability expert, Evan Hendricks, could not identify any factual inaccuracies in the CitiMortgage report. [SOF ¶ 19] Rather, Mr. Hendricks conceded that all of his opinions "flow from the assumption" that the CitiMortgage debt was "extinguished" in the Trustee Sale. [SOF ¶ 20] Though all of his opinions flow from that assumption, Mr. Hendricks conceded that CitiMortgage does *not* have any duty under FCRA to investigate the legal effect of the Anti-Deficiency Statute. [SOF ¶ 21] For example, he testified:

> Q. Are you offering an opinion in the case that CitiMortgage had an obligation to do that analysis, to perform a legal analysis, to consult with lawyers in Arizona to determine the legal effect of the anti-deficiency statute, and then make a legal determination that he didn't—that Mr. Gross no longer owed anything, as a result of the trustee sale?
>
> A. No, I don't believe I'm offering opinion that they needed to go that far.

[SOF ¶ 22]

Mr. Hendricks' opinion is consistent with the law. *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) (affirming summary judgment for furnisher; "a plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions"); *Van Veen v. Equifax Information*, 844 F. Supp. 2d 599, 608 (E.D. Penn. 2012) (granting summary judgment for furnisher; "a furnisher's duty to investigate extends to factual inaccuracies, not legal disputes"); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

(1st Cir. 2008) (alleged invalidity of mortgage "is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation"); *Herrell*, 218 F. Supp. 3d at 792-93 (granting furnisher's motion for summary judgment).

Plaintiff's claim, that his debt was extinguished as a matter of law, was a legal dispute that CitiMortgage had no duty under FCRA to investigate. A furnisher investigating that dispute would first need to decide the legal question whether the Anti-Deficiency Statute governs the debt. The statute does *not* categorically preclude deficiency judgments; its scope is limited to loans secured by "trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling." A.R.S. § 33-814(G).

There have been at least six appellate decisions on the meaning of the word "dwelling" in the statute, including cases in which the Court of Appeals and Supreme Court disagreed about what the word "dwelling" means.[2] To resolve Plaintiff's dispute, CitiMortgage would need to discover these cases, interpret them, and then apply their holdings to the facts—which would likely require CitiMortgage to send a private investigator to physically inspect the interior of the Property, likely at different times of day and over an extended period of time.

Assuming the statute applies, CitiMortgage would then need to answer the legal question whether the statute extinguishes the debt. As proved by the discussion in Part I.A, one could make a more-than-colorable argument that the text of the statute, Arizona judicial decisions, and decisions from other jurisdictions demonstrate that the answer is no. Nevertheless, because no Arizona court has rendered a definitive opinion, any legal

---

[2] *See BMO Harris Bank N.A. v. Wildwood Creek Ranch, LLC*, 234 Ariz. 100, 317 P.3d 641 (Ct. App. 2014), as amended, review granted, vacated, 236 Ariz. 363, 340 P.3d 1071; *Ind. Mortgage Co. v. Alaburda*, 230 Ariz. 181, 281 P.3d 1049 (Ct. App. 2012); *M&I Marshall & Ilsley Bank v. Mueller*, 228 Ariz. 478, 268 P.3d 1135 (Ct. App. 2011); *Tanque Verde Anesthesiologists Ltd. Profit Sharing Plan v. Proffer Group, Inc.*, 172 Ariz. 311, 836 P.2d 1021 (Ct. App. 1992); *Mid Kansas F. Sav. & Loan Ass'n v. Dynamic Dev. Corp.*, 167 Ariz. 122, 804 P.2d 1310 (1991).

judgment is necessarily subject to the discretion of the person making it. It can be neither "accurate" nor "inaccurate" nor "misleading" as a matter of fact or law.

Additional legal questions present themselves. A third is whether there are grounds for a legal argument that the debt is secured by additional collateral. *Pfeiffer*, 922 F. Supp. 2d at 832. A fourth is whether there are grounds for a legal argument that the debtor's property in other jurisdictions is subject to collection. *Light*, 410 A.2d at 269. That question would lead to an endless series of additional questions involving the exemption laws of other states, and factual questions about the debtor's property that CitiMortgage would have no way to answer without conducting the equivalent of a judgment debtor's examination.

These are all questions for a court, not CitiMortgage. But even if CitiMortgage had performed such an investigation, Plaintiff has no evidence that CitiMortgage would have agreed with Plaintiff's interpretation of the statute. The First Circuit affirmed summary judgment for the furnisher in a similar case:

> Chiang's affidavit and letters show that he had several disagreements with Verizon NE over his billing, which extended into state court litigation; Verizon NE does not dispute this. Chiang has not, however, demonstrated that any of his substantive disputes with Verizon NE involved actual, factual inaccuracies in his billing that a reasonable investigation could have detected. To the extent that his argument reduces to the claim that any investigation that did not accept his allegations as accurate was by definition unreasonable, it fails.

*Chiang*, 595 F.3d at 41. Plaintiff's first liability theory likewise "fails" because it "reduces to the claim that any investigation that did not accept his allegations as accurate was by definition unreasonable." *Id.*

**C. CitiMortgage Has No Duty To Report That Plaintiff Cannot Be Sued.**

Plaintiff's second liability theory is that CitiMortgage's reporting is accurate, but misleading, because the report does not explain that Plaintiff enjoys anti-deficiency protection. The Ninth Circuit affirmed summary judgment against the debtor on a substantially-identical "misleading" claim in *Carvalho v. Equifax Information Servs. LLC*, 629 F.3d 876 (9th Cir. 2010). In *Carvalho*, the debtor alleged that her account information, while factually correct, was misleading because "she was not legally obligated to pay . . .

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

and potential creditors would mistakenly assume from the derogatory item that she is uncreditworthy." *Id.* at 891. The Ninth Circuit rejected the claim, reasoning that "a consumer who avails herself of a good or service but defaults on payment would be considered less creditworthy than one who does not, *regardless of how legally sound her reasons for default are*. That she defaulted is certainly relevant to potential creditors and is precisely the type of information that a credit report is meant to supply." *Id.* (emphasis added). The court further held that FCRA does not impose a duty to "shade[] every credit history . . . in the best possible light for the consumer." *Id.* at 892 (quoting *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991)).

*Carvalho* is consistent with the Ninth Circuit case adopting the "misleading" standard, *Gorman v. Wolpoff & Abramson LLP*, 584 F.3d 1147 (9th Cir. 2009). In *Gorman*, the Ninth Circuit held that a credit report is not actionably misleading unless it is "misleading in such a way and to such an extent *that it can be expected to adversely affect credit decisions*." *Id.* at 1163 (emphasis added) (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). Further, that a report may be "imprecise" or "incomplete" does not make it actionably "misleading" under FCRA. *Shaw v. Experian Info. Solutions Inc.*, 891 F.3d 749, 757 (9th Cir. 2018) ("imprecision alone" not "misleading" under FCRA); *Sepulvado*, 158 F.3d at 896 (credit report that was "incomplete" in its description of foreclosure deficiency was not misleading); *Chiang*, 595 F.3d at 36-37 ("Mere incompleteness, however, is not enough; the incompleteness must be such as to make the furnished information misleading in a material sense").

The standard for proving that an accurate report is "misleading in a material sense" is a high one. *See Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014) (not misleading to report debt as being discharged in bankruptcy, despite not reporting that the debtor voluntarily made post-discharge payments); *Saylor v. Pinnacle Credit Servs. LLC*, 118 F. Supp. 3d 881, 886 (E.D. Va. 2015) (report was accurate notwithstanding collection of the account was barred by the statute of limitations); *Wadley v. Ford Motor Credit Co.*, 397 F. Supp. 2d 781, 783-84 (E.D. Va. 2005) (report was accurate

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

notwithstanding allegation that borrower justifiably refused to pay car loan after he returned the car because it was defective); *Felts v. Wells Fargo Bank N.A.*, 893 F.3d 1305, 1318-19 (11th Cir. 2018) (reporting account as delinquent was not misleading, despite that plaintiff was making timely payments under a partial payment plan, and report failed to indicate which obligation was delinquent - the original note or the plan). Indeed, the D.C. Circuit has held that a report is *not* misleading, merely because its *incompleteness* might deprive a potential creditor of “information which might be relevant to his decision whether to grant credit.” *Koropolous v. Credit Bureau, Inc.*, 734 F.2d 37, 45 (D.C. Cir. 1984).

Under these authorities, Plaintiff has failed to produce evidence that the CitiMortgage report was “misleading in a material sense” such that it would “be expected to adversely affect credit decisions.” The CitiMortgage report omitted only the information that arguably *every* credit report omits—a description of the remedies available to the creditor. Potential creditors (like everyone else) are presumed to know the law. *Flores v. County of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014) (“everyone is presumed to know the law”). Plaintiff has failed to overcome this presumption with evidence that any particular creditor, or creditors in general, will not know about Arizona’s anti-deficiency laws unless CitiMortgage educates them about these laws in the credit report. The error in Plaintiff’s position is self-evident.

Notably, the Anti-Deficiency Statute is not unique; the Arizona Revised Statutes are replete with laws that limit the remedies available to a creditor. *E.g.*, A.R.S. § 47-9615(E)(2) (obligor not liable for deficiency upon disposition of collateral in certain secured transactions); A.R.S. § 33-730 (no deficiency where security agreement and mortgage are given as collateral for combined purchase of real property and consumer goods); A.R.S. § 44-5501 (consumer not liable for deficiency when goods purchased in a “consumer credit sale” are repossessed); A.R.S. § 33-964 (homestead exemption); A.R.S. § 33-1121 to 1133 (12 separate personal property exemptions). Some of these contain arbitrary nuances, based upon facts that no furnisher is likely to know. *E.g.*, A.R.S. § 33-1123 (exemption from collection against “household furniture and furnishings, household goods, including

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

consumer electronic devices, and household appliances personally used by the debtor or a dependent of the debtor and not otherwise specifically prescribed in this chapter are exempt from process provided their aggregate fair market value does not exceed six thousand dollars").

FCRA does not give furnishers the role of educating potential creditors about the law. FCRA does not require the furnisher to attach as "Exhibit A" to the credit report a copy of the property and consumer protection laws in each state in which the debtor might own property. Potential creditors know that such laws exist and have equal access to that information. To the extent that a particular statutory protection is notable to a particular debtor, *that debtor* is in the best position to notify potential creditors. *See Carvalho*, 629 F.3d at 892 (debtor has statutory right "to file a brief explanatory statement to be reported along with the disputed item"). A credit report that makes *no representation* about the remedies available to a creditor is not "misleading" as a matter of law under *Gorman*.

Nor was the report in this case misleading as a matter of undisputed fact. Plaintiff admits that, between 2013 and today, he has lacked sufficient resources to pay off the debt. [SOF ¶ 23] He also admits that, between 2013 and today, he has lacked sufficient resources to make regular monthly payments on the debt. [SOF ¶ 24] Thus, the existence or non-existence of anti-deficiency protection has no bearing on the question of Plaintiff's creditworthiness between 2013 and today. In fact, any suggestion that Plaintiff has not been making payments, because he enjoys anti-deficiency protection, is itself misleading. As a matter of undisputed fact, the CitiMortgage report does not mislead about Plaintiff's creditworthiness.

## II. PLAINTIFF LACKS EVIDENCE OF DAMAGES.

CitiMortgage also is entitled to summary judgment because Plaintiff lacks evidence of damages *caused* by the CitiMortgage reporting, even assuming that the reporting violated FCRA (it did not). Plaintiff "has the burden of proving that [his] damages were caused by the defendant's violations." *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1099 (D. Ariz. 2003) (granting summary judgment for furnisher); *see also Crabill v. Trans Union LLC*, 259

F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the alleged violation of [FCRA] and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages"); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) ("We stress that [plaintiff has] the affirmative duty of coming forward with evidence supporting his claim that [furnisher's] alleged inaccurate report caused him harm").

**A. Plaintiff Has No Evidence Of Actual Economic Loss.**

In his disclosure statements and mandatory discovery responses, Plaintiff has claimed economic damages for only one specific transaction, a mortgage loan for which he was *approved* in June 2018. [SOF ¶ 25] Like the plaintiff in *Acton*, Plaintiff has produced no evidence that the CitiMortgage reporting affected the terms of that loan, or to what extent. To the contrary, the lender has produced documents that refute Plaintiff's claim.

According to the lender's underwriting notes, the CitiMortgage account was "omitted from the underwriting analysis." [SOF ¶ 26] The lender's "Loan Analysis" explains that decision in detail: "Borrower had a foreclosure in 2013. Waiting period met. Please note the 2nd for that property [CitiMortgage] is continuing to report on borrower's credit but per Arizona state law creditors are not allowed to pursue deficiency judgments for purchase money liens which that 2nd was and has been documented. Borrower has had satisfactory credit for prior 24 months." [SOF ¶ 27]

Additionally, the lender's file contains detailed letters, signed by Plaintiff, explaining the circumstances surrounding the CitiMortgage account and the foreclosure by the senior lender. [SOF ¶ 28] The credit report pulled by the lender includes, for the CitiMortgage account, a notation that the "account information is disputed by consumer." [SOF ¶ 29] The file also contains a copy of the Trustee's Deed from the foreclosure, and an e-mail from the lender to Plaintiff, stating that the terms offered were based on being able to confirm that "CitiMortgage was sold June 13, 2013." [SOF ¶ 30]

Neither is there evidence that the lender was deceived or misled by the CitiMortgage reporting; to the contrary, the lender was fully informed of the foreclosure and of Arizona

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

law. [*See also* SOF ¶ 31 (Plaintiff was not deceived or misled by the credit report, and is not aware of anybody who was misled)] Accordingly, Plaintiff cannot dispute that the CitiMortgage report did not cause any actual economic harm. CitiMortgage is entitled to summary judgment on Plaintiff's economic damage claim.[3]

**B. Plaintiff Has No Evidence Of Emotional Harm Caused By The Alleged Violation.**

Plaintiff's claim for emotional distress necessarily fails as well, because Plaintiff complains about emotional distress that is attributable to *adverse credit decisions* such as being unable to get a loan. [SOF ¶ 32] Plaintiff had not reviewed his credit report prior to his deposition, did not know what it said, and did not understand it when he saw it; he is not distressed by it in the abstract, but is distressed about the credit decisions that he believes it caused. [SOF ¶ 33] Because there is no evidence that CitiMortgage *caused* these credit decisions, there is likewise no causal connection between CitiMortgage and the alleged emotional distress.

Notably, Plaintiff's uniformed beliefs about his credit report are indisputably wrong. Plaintiff erroneously believes that CitiMortgage acquired the Property at the Trustee Sale and resold it for cash. [SOF ¶ 34] He erroneously believes that CitiMortgage should take the debt off his credit report because "the property was returned to CitiMortgage." [SOF ¶ 35] Plaintiff's "grievance in this lawsuit" is that CitiMortgage was fully paid by retaking the Property in the Trustee Sale. [SOF ¶ 36] These beliefs are not accurate. [SOF ¶ 8]

Plaintiff's knowledge about CitiMortgage's credit reporting also is inaccurate or incomplete. As of the date he was deposed, Plaintiff did not know that CitiMortgage had

---

[3] Plaintiff also has made a general claim for economic damages for a reduction in his credit score. A plaintiff is not entitled to damages under FCRA for a reduction in his credit score absent injury resulting from an actual credit decision. *Novak v. Experian Info. Solutions Inc.*, 782 F. Supp. 2d 617, 623 (N.D. Ill. 2011); *Tolliver v. Experian Info. Solutions Inc.*, 973 F. Supp. 2d 707, 722 (S.D. Tex. 2013); *Hrebal v. Seterus Inc.*, 598 B.R. 252, 272 (D. Minn. 2019). Further, as Plaintiff's expert admits, CitiMortgage coded the account with an "XB" marker in response to Plaintiff's disputes. An account coded with an "XB" marker does *not* make a credit score go down. [SOF ¶ 11] Thus, Plaintiff's claim that CitiMortgage reduced his credit score is factually wrong, in addition to being legally insufficient.

charged off the account. [SOF ¶ 37] He did not know that CitiMortgage has been reporting the account to the Credit Agencies since May 2018 as being closed with a $0 balance. [SOF ¶ 38] He believes that CitiMortgage has not even responded to the 2018 disputes that he sent to the Credit Agencies. [SOF ¶ 39]

Plaintiff cannot recover for distress that was caused by his erroneous beliefs about the facts. Further, Plaintiff's primary argument is that the report was potentially misleading because it failed to inform creditors that Plaintiff cannot be personally sued under the Anti-Deficiency Statute. But under Arizona law, Plaintiff could *never* be personally sued on any debt secured by a mortgage. *Baker v. Gardner*, 160 Ariz. 98, 770 P.2d 766 (1988). The Trustee Sale changed nothing about Plaintiff's personal liability. *Lange*, 241 Cal. App. 2d at 799-800 (sale did not "discharge" liability to pay note because, under anti-deficiency statute, "[f]rom the inception of such an obligation the obligor is immune from liability thereon").

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Plaintiff does not understand any of this. [SOF ¶ 40] Accordingly, Plaintiff admits that he was not distressed about his credit report *before* the Trustee Sale, nor does he have any complaint about the way in which his *current* lender is reporting his mortgage—all of which would violate FCRA under Plaintiff's theory that the absence of a note about his personal liability was "misleading." [SOF ¶ 41] Plaintiff is *not* distressed by the absence of an explanatory note from his credit report. [SOF ¶ 42] Thus, as a matter of undisputed fact, the alleged FCRA violation—omitting an explanatory note about Plaintiff's personal liability—has not caused Plaintiff any emotional distress.

**C. Plaintiff Lacks Standing To Sue For Statutory Damages.**

Because Plaintiff has not suffered an injury-in-fact, Plaintiff lacks Article III standing to sue for nominal statutory damages under FCRA. *Jaras v. Equifax Inc.*, 766 F. App'x 492 (9th Cir. 2019) (affirming dismissal of FCRA complaint for lack of standing). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–560 (1992)). A plaintiff does not

"automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

As in *Spokeo*, the right that Plaintiff sues to vindicate is the bare procedural right to have CitiMortgage investigate his dispute. *See* 15 U.S.C. § 1681s-2(b). Plaintiff lacks Article III standing to sue for a violation of that right, absent a concrete injury that is actual or imminent. Plaintiff has none. In response to his dispute, CitiMortgage accurately reported the account as being charged off with no balance. CitiMortgage also reported the account as being in dispute by using the "XB" marker, which will prevent the account from lowering Plaintiff's credit score. Nor has Plaintiff provided evidence of any adverse credit decision that is causally related to the CitiMortgage reporting, or identified any reason (let alone evidence) why any future lender would treat him differently based on the manner in which CitiMortgage has reported a debt that is indisputably real and unpaid.

In *Jaras*, the Ninth Circuit affirmed the dismissal of FCRA claims concerning the inaccurate reporting of Plaintiffs' bankruptcies because "Plaintiffs here do not make any allegations about how the alleged misstatements in their credit reports would affect any transaction they tried to enter or plan to try to enter—and it is not obvious that they would, given that Plaintiffs' bankruptcies themselves cause them to have lower credit scores with or without the alleged misstatements." *Jaras*, 766 F. App'x at 494. Likewise, "it is not obvious" that omitting a description of Arizona property laws from the credit report would cause any harm to Plaintiff, given the presumption that lenders know the law, that his foreclosure by a different lender *already* harms his credit, and that a charged-off account *also* harms his credit "with or without the alleged misstatements." [SOF ¶ 43]

The analysis here is further complicated by the fact that Plaintiff has *numerous* unrelated derogatory entries on his credit report, including the foreclosure on his first mortgage, more than 50 late payments on other accounts, other accounts placed for

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

collection, and other accounts that have been charged-off. [SOF ¶ 44] In this factual setting, it is impossible to trace an actual or imminent harm to the CitiMortgage reporting. Plaintiff lacks standing to sue under FCRA. *See also Piper v. Meade & Assoc. Inc.*, 282 F. Supp. 3d 905, 910 (D. Md. 2017) (dismissing complaint, where "Piper made no factual allegation in her Complaint of any specific injury whatsoever at the hands of Meade resulting from a single alleged inaccuracy from which the Court could infer any kind of material harm").

**Relief Requested**

The Court should enter summary judgment for Defendant CitiMortgage Inc. on each claim in Plaintiff's Third Amended Complaint.

DATED this 16th day of December, 2019.

BRYAN CAVE LEIGHTON PAISNER LLP

By s/ Gregory B. Iannelli
Sean K. McElenney
Gregory B. Iannelli
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

Attorneys for Defendant CitiMortgage Inc.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David A. Chami
Beth Findsen
Price Law Group, APC
8245 N. 85th Way
Scottsdale, AZ 85258
david@pricelawgroup.com
beth@pricelawgroup.com
Attorneys for Plaintiff

s/ Gregory B. Iannelli