David A. Chami, AZ #027585
david@pricelawgroup.com
Michael Yancey III, AZ #037187
michael@pricelawgroup.com
Nemer N. Hadous, AZ #027529
nick@pricelawgroup.com
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
F: (818) 401-1457

*Attorneys for Plaintiff*
*Marshall Gross*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Marshall Gross,

Plaintiff,

v.

Citibank N.A., et al.,

Defendants.

Case No.: CV 18-02103-PHX-ROS

**JOINT PROPOSED JURY INSTRUCTIONS**

Plaintiff Marshall Gross ("Mr. Gross" or "Plaintiff") and Defendant CitiMortgage Inc.'s ("Citi"), pursuant to the Court's scheduling order at Doc. 162, submit the following Proposed Jury Instructions.

## A. JOINT PROPOSED JURY INSTRUCTIONS

The parties submit the following proposed jury instructions, based on the Ninth Circuit Model Jury Instructions, to which both parties agree:

### INSTRUCTIONS ON THE TRIAL PROCESS

**INSTRUCTION 1.3**
**DUTY OF JURY**
(COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

## 1.4 DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**INSTRUCTION 1.5**
**CLAIMS AND DEFENSES (as modified)**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiff asserts that American Family Insurance acted in bad faith by causing an unreasonable delay in authorizing Mr. Jarman's spinal decompression surgery resulting in damages to the Plaintiff. The Plaintiff has the burden of proving these claims by a preponderance of the evidence.

The Defendant denies its conduct caused any injury to Plaintiff and that it reasonably and fairly adjusted Plaintiff's insurance claim.

**INSTRUCTION 1.6**
**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE (as modified)**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true or simply put, greater than 50%.

You should base your decision on all of the evidence, regardless of which party presented it.

**INSTRUCTION 1.9**
**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits that are admitted into evidence;
3. any facts to which the lawyers have agreed; and
4. any facts that I may instruct you to accept as proved.

## INSTRUCTION 1.10
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.
2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.
3. Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.
4. Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**INSTRUCTION 1.11**
**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**INSTRUCTION 1.12**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**INSTRUCTION 1.13**
**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**INSTRUCTION 1.14**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;
2. the witness's memory;
3. the witness's manner while testifying;
4. the witness's interest in the outcome of the case, if any;
5. the witness's bias or prejudice, if any;
6. whether other evidence contradicted the witness's testimony;
7. the reasonableness of the witness's testimony in light of all the evidence; and
8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**INSTRUCTION 1.15**
**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors:

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, [although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or

view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**INSTRUCTION 1.17**
**NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations, you will not have a transcript of the trial testimony.

**INSTRUCTION 1.18**
**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**INSTRUCTION 1.19**
**QUESTIONS TO WITNESSES BY JURORS**

PLAINTIFF RECOMMENDS OPTION 1:

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. [Specific reasons for not allowing jurors to ask questions may be explained.] If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

DEFENDANT RECOMMENDS OPTION 2:

**Comment**

Whether to allow jurors to ask questions is a subject debated among judges. There are risks involved in allowing jurors to ask questions of witnesses. *See DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 517 (4th Cir. 1985) (discussing risks of juror questioning). If a judge decides to allow questions, the following instruction and procedures may be helpful.

**INSTRUCTION**

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do

not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence. By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

**PROCEDURES**

In the event the judge allows jurors to submit questions for witnesses, the judge may consider may consider taking the following precautions and using the following procedures:

1. The preliminary instructions should describe the court's policy on juror-submitted questions, including an explanation of why some questions may not be asked. All juror-submitted questions should be retained by the clerk as part of the court record whether or not the questions are asked.

2. At the conclusion of each witness's testimony, if a juror has a written question it is brought to the judge.

3 Outside the presence of the jury, counsel are given the opportunity to make objections to the question or to suggest modifications to the question, by passing the written question between counsel and the court during a side-bar conference or by excusing jurors to the jury room.

4. Counsel or the judge asks the question of the witness.

5. Counsel are permitted to ask appropriate follow-up questions.

6. The written questions are made part of the record.

**INSTRUCTION 1.20**
**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**INSTRUCTION 1.21**
**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**INSTRUCTIONS ON TYPES OF EVIDENCE**

**INSTRUCTION 2.4**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of the following witnesses were taken:

1. Allison Hammett
2. John Ulzheimer
3. Evan Hendricks
4. Shelley Hess

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

## 2.9 IMPEACHMENT EVIDENCE – WITNESS

The evidence that a witness testified differently at trial than during a deposition may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

### Comment

*See* Fed. R. Evid. 608–09; *United States v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) (finding that district court properly admitted impeachment evidence following limiting instruction to jury). If this instruction is given during the trial, the Committee recommends giving the second sentence in numbered paragraph 3 of Instruction 1.10 (What Is Not Evidence) with the concluding instructions. *See also* Instruction 1.11 (Evidence for Limited Purpose).

**INSTRUCTION 2.13**
**EXPERT OPINION (as modified)**

You will likely hear testimony from expert witnesses in this case. It is expected that they will provide you with their expert opinions and the reasons for those opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## INSTRUCTION 2.14
## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**INSTRUCTION 2.15**
**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**INSTRUCTIONS CONCERNING DELIBERATIONS**

**INSTRUCTION 3.1**

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**INSTRUCTION 3.2**
**CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible. These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside

the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**INSTRUCTION 3.3**
**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

## 3.4 READBACK OR PLAYBACK

**Comment**

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

> Because a request has been made for a [readback] [playback] of the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above. *See United States v. Newhoff*, 627 F.3d 1163, 1167 (9th Cir. 2010); *see also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.C (2013).

**INSTRUCTION 3.5**
**RETURN OF VERDICT**

A verdict form has been prepared for you. [Explain verdict form as needed.] After you have reached unanimous agreement on a verdict and on any amount of damages you decide to award (if any), your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the [bailiff] that you are ready to return to the courtroom.

## AGENCY

## INSTRUCTION 4.1

## CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**INSTRUCTION 4.2**
**LIABILITY OF CORPORATIONS -**
**SCOPE OF AUTHORITY NOT IN ISSUE**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

## DAMAGES

### INSTRUCTION 5.1

### DAMAGES – PROOF (as modified)

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

## B. NON-MODEL INSTRUCTIONS REQUESTED BY PLAINTIFF

**Proposed Instruction No. 1.**

FCRA – Introduction

This case arises under the Fair Credit Reporting Act ("FCRA"), a federal law intended to ensure the maximum possible accuracy of personal information about consumers, including confidentiality, accuracy, and proper use of confidential information.

Mr. Gross contends that Citi violated the FCRA by failing to conduct a reasonable investigation into its inaccurate reporting after receiving Mr. Gross's dispute letters.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 1**

[15 U.S.C. § 1681s-2(b); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1249 (9th Cir. 2022) ("When a consumer disputes an entry on his credit report, the furnisher must conduct a reasonable investigation—not merely rubberstamp information in the file.").

**Defendant's Objections:**

This is not a proper instruction as it does not instruct the jury about the law applicable to any element of the claim. Rather, it is a one-sided characterization by Plaintiff of the Fair Credit Reporting Act. In order to make the instruction not one-sided and misleading, Defendant would need an opportunity to add its own characterization and description, and the effort would devolve into bloated advocacy rather than illuminating instruction to the jury.

The instruction further improperly states that "inaccurate reporting" occurred

although this is a disputed fact. On appeal, Plaintiff did not seek review of the Court's order denying his own motion for summary judgment (he expressly waived this issue in his opening brief), but only the Court's order granting Citi's motion for summary judgment. Hence, there was no question before the appellate court that required the court to decide that Citi's reporting was inaccurate as a matter of undisputed fact. Quite simply, the alleged inaccuracy of Citi's reporting was not established on appeal, nor could it have been. What the Ninth Circuit established is a legal principle: that reporting an outstanding balance after the senior trustee sale would be inaccurate as a matter of law. Citi intends to establish at trial that, at least in part, it did not report an outstanding balance or ongoing late payments after the trustee sale. Instead, the credit report accurately reflects the payment status on the account (180 days late) *before* the senior trustee sale. To the extent these facts can be established, the reporting would not run afoul of the legal principle expressed by the Ninth Circuit.

The instruction further refers to "maximum possible accuracy" but that is not a legal standard under the Fair Credit Reporting Act that applies to Citi. *See* 15 U.S.C. § 1681e(b) ("Whenever a *consumer reporting agency* prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates") (emphasis added). The supposed "instruction" is thus profoundly misleading as it suggests that Citi can be sued or held liable if it failed to assure "maximum possible accuracy" but this is clearly not the law. *E.g.*, *Croft v. Bayview Loan Serv. LLC*, 176 F. Supp. 3d 582, 587 (D. S.C. 2016) ("As a careful reader will readily observe, under the terms of the FCRA, Plaintiff's claims for a violation of §

1681e(b) are cognizable against only Defendant Equifax and Defendant Experian because they are, as already observed, consumer reporting agencies. The § 1681e(b) claim cannot be against Defendant Bayview, however, because it is not a consumer reporting agency under the terms of the FCRA").

Plaintiff's Response:

The lack of specific claim elements is not a legitimate objection to a simple introductory instruction. Plaintiff maintains that such an introductory instruction is commonplace and important in the context of litigation arising under a federal statute as opposed to under the common law. It is of importance that the jury be introduced to the relevant statute at the beginning and be made aware that the statute was enacted with a specific purpose in mind.

Plaintiff believes the original language is an accurate reflection of the stated purpose of the statute and Ninth Circuit rulings on the same. *See Diaz v. Trans Union, LLC,* No. 1:18-cv-01341-DAD-EPG, 2019 U.S. Dist. LEXIS 95549, at *4 (E.D. Cal. June 5, 2019) ("Congress thus enacted the FCRA in order to ensure fair and accurate credit reporting.") (quoting *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 755 (9th Cir. 2018)); *Mehl v. Green*, No. 2:21-cv-01861-TLN-JDP (PS), 2022 U.S. Dist. LEXIS 159097, at *10 (E.D. Cal. Sep. 1, 2022) ("To ensure the accuracy of consumer credit reports, the FCRA imposes certain duties on sources, known as 'furnishers,' that provide information to credit reporting agencies.") (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009)).

**Proposed Instruction No. 2.**

<u>FCRA – Purpose</u>

"The ... FCRA ... was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. ... Congress intended to promote efficiency in the nation's banking system and to protect consumer privacy. ... Congress addressed the latter concern by including provisions intended "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." ... Congress also hoped to address a number of related problems, including "the inability at times of the consumer to know he is being damaged by an adverse credit report," the lack of "access to the information in [his] file," the "difficulty in correcting inaccurate information," and "getting [his] version of a legitimate dispute recorded in ... [his] credit file."

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 2**

*Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010); *Dalton v. Capital Assoc. Industries, Inc.*, 257 F.3d 409 (4th Cir. 2000), (citing 116 Cong. Rec. 36570); *Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions,* § 92.02; 15 U.S.C. § 1681

<u>**Defendant's Objections:**</u>

Like the first instruction, this is not a true jury instruction as it merely states Plaintiff's one-sided characterization of the "purpose" of the Fair Credit Reporting Act, which does not instruct the jury about the law applicable to any claim. The supposed instruction also

contains numerous statements about matters that have nothing to do with this case, such as "lack of access" to information in the credit file. In order to make this "instruction" not misleading, Citi would need an opportunity to add its own characterization and cherry-picked quotes from cases that favor Citi's position, which would be unwieldy and would not provide any meaningful guidance to the jury.

Plaintiff's response: Again, Defendant's objection to a commonplace explanatory jury instruction in a case which involves the application of a federal consumer protection statute is illegitimate. It is important that the jury understand the context of the litigation at issue, and a basic understanding of the statute governing the outcome is necessary. Defendant's objection to the legal citations utilized as "cherry-picked" is unfounded; the quotes are appellate level decisions recognizing the purposes of the FCRA's enactment, as set forth in the text of the statute itself. Finally, Defendant had the "opportunity to add its own characterization" to the proposed jury question. In fact, the whole point of a joint set of proposed jury instructions with objections and responses is to include such proposed amendments. That Defendant chose not to do so here is not a reason to disallow a mundane explanatory jury instruction in a case arising under a complex federal statute.

**Proposed Instruction No. 3.**

FCRA – § 1681s-2(b) Relevant Text

As mentioned, Mr. Gross brings a claim for violation of the FCRA against Citi based on 15 U.S.C. § 1681s-2(b). The relevant text of this section states:

> After receiving notice […] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [furnisher] shall-
>
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly-
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 3**

[15 U.S.C. § 1681s-2(b) (brackets included for clarity)]

**Defendant's Objections:**

This is another supposed "instruction" that does not truly instruct the jury about the law applicable to any element of the claim. It is a recitation of certain statutory text without explaining to the jury what the text means or how it relates to any issue in this case. This

serves no purpose except to confuse the jury and waste time.

Plaintiff's response: Plaintiff is unsure as to how a reading of the very statutory text under which this case arises would be a "waste [of] time." Plaintiff's entire claim, and Defendant's corresponding defense, rests upon the jury's application of the quoted text. Why Defendant is so reticent to have the pertinent statute, giving rise to this litigation and the subject of the jury's application of facts to law, placed in front of the jury is perplexing.

**Proposed Instruction No. 4.**

1681s-2(b) – Description and General Elements

If Citi chooses to provide, or "furnish", information about consumers to consumer reporting agencies ("CRAs"), it is a "furnisher" under the FCRA. If a furnisher provides inaccurate information about a consumer to a CRA, the FCRA allows that consumer to dispute the inaccuracy by communicating that dispute to the CRA. The CRA is required to forward that dispute to the furnisher.

Once a furnisher receives a dispute, the FCRA requires that the furnisher conduct a reasonable and non-cursory investigation into the disputed information, review all relevant information provided with the dispute, and if information is found to be inaccurate, the furnisher must correct the inaccurate information, delete the inaccurate information, or permanently block the reporting of the inaccurate information.

As the plaintiff in this case, Mr. Gross bears the burden of proving all elements of his claim under § 1681s-2(b) by a preponderance of the evidence. A section 1681s-2(b) claim generally requires proof of the following elements:

1. The existence of an inaccuracy on the consumer's report;
2. That the consumer issued a dispute to the CRA;
3. That the furnisher received notice of the dispute from the CRA;
4. That the furnisher failed to conduct a reasonable investigation with respect to the disputed information; and
5. That the furnisher's failure to conduct a reasonable investigation was the result of negligence or willfulness.

You are instructed that the information that Citi furnished about Mr. Gross was inaccurate, so this element is established. You are further instructed that the parties have stipulated that Mr. Gross disputed the inaccuracy on his report to the CRAs, and that the CRAs forwarded the disputes to Citi, who received them, so this element is also established.

Therefore, to prevail on his claim under § 1681s-2(b), Mr. Gross must prove each of the following elements by a preponderance of the evidence:

1. That Citi failed to conduct a reasonable investigation with respect to the information he disputed;

2. That Citi's failure to conduct a reasonable investigation was the result of negligence or willfulness;

If Mr. Gross proves the above elements by a preponderance of the evidence, you must find that Citi violated 15 U.S.C. § 1681s-2(b). If Mr. Gross fails to prove the above elements by a preponderance of the evidence, you must that Citi did not violate 15 U.S.C. § 1681s-2(b).

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 4**

[15 U.S.C. §§ 1681a, 1681n, 1681o, and 1681s-2(b); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("FCRA regulates how furnishers must respond to a notice of dispute from a credit reporting agency. Among other things, the furnisher must correct or delete inaccurate information after conducting an 'investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b). That 'investigation' must be at least 'reasonable' and 'non-cursory.' *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). A consumer may sue a furnisher and recover damages if the furnisher willfully or

negligently violated FCRA. 15 U.S.C. §§ 1681n, 1681o; *see Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017)").

**Defendant's Objections:**

Citi objects to this instruction on the following grounds: (1) element "5" in the first list and element "2" in the second list refers to willfulness which has no support in the record; (2) the instruction refers to the jury having been instructed that Citi's reporting was inaccurate, which is a disputed fact; and (3) the instruction states that Plaintiff disputed "the inaccuracy" which is another instance of Plaintiff assuming that inaccuracy has been established when it has not been established.

Plaintiff's Response: Defendant's first objection is groundless. Defendant is not entitled to unilaterally determine that the evidentiary record does not support a claim for willfulness. That is a question of fact for the jury. More importantly, willfulness is a part of Plaintiff's prima facie case and thus must be included in the jury instructions. *See* 15 U.S. Code § 1681n (establishing civil liability for willful noncompliance).

Defendant's second and third objections are utterly meritless in light of the Ninth Circuit's remand opinion. Inaccuracy has in fact been established as a matter of law in this case by the Ninth Circuit, a decision which binds this case going forward. *See Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1252 (9th Cir. 2022) (Plaintiff has "established as a matter of law that CitiMortgage's reports were 'patently incorrect.'") (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (defining inaccuracy under FCRA as information that is 'patently incorrect' or materially misleading)). "The law of the

case doctrine permits a district court on remand to determine only those issues not expressly or impliedly determined by the appellate court." *Norris v. Arizona Governing Committee*, 796 F.2d 1119, 1121 (9th Cir. 1986) (emphasis added) (citing *Donovan v. Burlington Northern, Inc.*, 781 F.2d 680, 684 (9th Cir. 1986)). "On remand, the district court 'must proceed in accordance with the mandate and such law of the case as was established by the appellate court.'" *U.S. v. Alpine Land Reservoir Co.*, 983 F.2d 1487, 1491 (9th Cir. 1992) (quoting *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977)) (quoting *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 401 (9th Cir. 1985) ("on remand, district court shall act in accordance with the mandate 'in light of [the] opinion'" […])). The Court must therefore instruct the jury that inaccuracy has been established. It is further undisputed that Plaintiff disputed the reporting and that Defendant received and responded to the dispute.

**Proposed Instruction No. 5.**

FCRA – Actual Damages Awardable for Negligent Violation

If you find that Citi negligently failed to comply with the FCRA, Citi is liable for Plaintiff's actual damages caused by that failure. It is your duty to determine the amount of money that reasonably, fairly, and adequately compensates Mr. Gross's for the damage that you decide resulted from Citi's failure to comply.

If the evidence in this case warrants such a finding, you must award to plaintiff fair and complete monetary compensation for each of the following four (4) categories of actual damages:

(1) **Loss of Credit Opportunity.** This type of actual damages consists of lost loans or other credit opportunities, regardless of whether these missed credit opportunities resulted in out-of-pocket or monetary losses for the plaintiff. This type of damages focuses upon a plaintiff's inability to use his or her credit or to obtain new credit.

(2) **Credit Defamation.** This type of actual damages consists of harm to the plaintiff's credit rating, credit reputation and/or good name.

(3) **Economic or Financial Losses.** This type of actual damages consists of out-of-pocket or monetary losses that the plaintiff already incurred, will incur into the future, or both. Wasted time is also a concrete harm that is compensable under the FCRA.

(4) **Emotional Distress.** This type of actual damages is broad in nature. It can consist of any worry, frustration, anxiety, humiliation, embarrassment, and/or mental

anguish, or combination thereof, suffered by the plaintiff as result of defendant's failure to comply with the FCRA. Physical injuries may also be caused by emotional distress.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 5**

*See* 15 U.S.C. §1681o; *Salcedo v. Hanna*, 936 F.3d 1162, 1172-73 (11th Cir. 2019); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1315 (11th Cir. 2001); *Brim v. Midland Credit Management, Inc.*, 795 F. Supp. 2d 1255 (N.D. Ala. 2011); *Johnson v. MBNA Bank*, 3:02CV523 (E.D. Va. 2003) aff'd 357 F.3d 426 (4th Cir. 2004); *Dixon-Rollins v. TransUnion, LLC*, Civil Action NO. 09-646 (E.D. Pa. 2010); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 718 (3d Cir. 2010) (A jury can award actual damages for negligent violations of the FCRA.); *Philbin v. Trans Union Corporation*, 101 F.3d 957, 962-63 (3d Cir. 1996); *Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354, 2005 WL 2009272, *7 (6th Cir. Aug. 22, 2005); *Dalton v. Capital Assoc.*, 257 F.3d 409, 418-19 (4th Cir. 2001); *Fischl v. GMAC*, 708 F.2d 143 (5th Cir. 1983); *Millstone v. O' Hanlon Reports, Inc.*, 529 F.2d 829, 834-35 (8th Cir. 1976); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225-27 (3d Cir. 1997) (actual damages may be emotional in nature); *Guimond v. Trans Union*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Dalton v. Capital Assoc.*, 257 F.3d 409, 418-19 (4th Cir. 2001); *Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d 582, 588-89, 2003 WL 22992081, *3-5; *Evantash v. G.E. Capital Mortgage Servs., Inc.*, Civ. No. 02-1188, 2003 WL 22844198, *5 (E.D. Pa. Nov. 25, 2003); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 321 (E.D. Pa. 2003); *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982)

**<u>Defendant's Objections:</u>**

Plaintiff has not cited legal authority for the notion that "lost credit opportunity" or "credit defamation" are compensable harms in the absence of some concrete actual loss that can be proved at trial. No such loss has been disclosed nor has any computation and measure of damages for these categories been disclosed. Likewise, Plaintiff has not cited legal authority or disclosed a computation of damages related to "wasted time." The reference to "physical injuries" is unsupported by the record as no such injuries have been disclosed. The reference to "future" economic losses is unsupported by the record, as the record reflects that Citi's account stopped reporting on Plaintiff's credit report at least three years ago, so there can be no future harm.

<u>Plaintiff's response:</u> Plaintiff has cited to eighteen judicial opinions supporting the various areas of compensable harm existing under the FCRA. Defendant's objection fails to cite a single case in opposition. If the above eighteen citations are insufficient, as Defendant argues they are, Plaintiff cites to the following additional opinions:

*Losch v. Nationstar Mortg.*, 995 F.3d 937, 943 (11th Cir. 2021) (Plaintiff "needn't show that the false reporting caused his credit score to plummet; **the false reporting itself was the injury**. […]) (comparing harm under the FCRA to defamation) (emphasis added); *Cordero v. Fin. Assistance Inc.*, No. C06-02529 MJJ, 2006 U.S. Dist. LEXIS 86694, at *30 (N.D. Cal. Nov. 29, 2006) ("Loss of opportunity in the mortgage market or a delay in obtaining credit resulting in less favorable terms may constitute compensable damages under the FCRA.") (citing *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 475

(2d Cir. 1995) (citing *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982)));

**Proposed Instruction No. 6.**

<u>FCRA – Further Instruction on Emotional Distress Damages</u>

A few more instructions on emotional distress damages available for violations of the FCRA.

Humiliation and embarrassment are cognizable injuries under the FCRA. There is no requirement that a plaintiff provide corroborating evidence or medical testimony in support of an award of damages. A plaintiff may recover for humiliation and embarrassment even if he has incurred no out-of-pocket expenses.

The amount and severity of Mr. Gross's claimed damages for emotional distress is a question of fact, for you, the jury, to decide based on all of the evidence before it. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish and emotional distress. Therefore, you must determine a fair and adequate award, through the exercise of your judgment and experience in the affairs of the world after considering all the facts and circumstances presented during the trial of this case, sufficient to compensate Mr. Gross for any emotional harm you find to have been caused by Citi's failure to comply with the FCRA.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 6**

*Roybal v. Equifax* , No. 2:05–cv–01207–MCE (KJM), 2008 WL 4532447, at *4–5 (E.D. Cal. Oct. 9, 2008) ("Actual damages may include damages for humiliation, mental distress, and injury to reputation and creditworthiness, even if the plaintiff has suffered no out-of-

pocket losses.”)(citing *Thomas v. Trans Union, LLC*, 197 F.Supp.2d 1233, 1236 (D.Or.2002)); *Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015); *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir.1983) ("Even where no pecuniary or out-of-pocket loss has been shown, the FCRA permits recovery for humiliation and mental distress ... as well as for injury to one's reputation and creditworthiness.") (internal citations omitted)

*Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 747 (11th Cir. 2020) (“Compensatory damages are intended to remedy a concrete loss suffered by the plaintiff due to the defendant’s wrongful conduct and to make that plaintiff whole.”); *Younger v. Citi Info. Sols., Inc.*, No. 19-11487, at *15 (11th Cir. June 19, 2020) (“Actual damages may include mental distress, even in the absence of out-of-pocket expenses or physical injury.”); *Wellons v. Warden, Ga. Diagnostic & Classification Prison*, 695 F.3d 1202, 1213 (11th Cir. 2013) (“A jury must base its verdict upon the evidence presented at trial.”); *Zimmerman v. Bank of Am.*, 1:07CV294, 2009 WL 418606 (N.D. Miss. Feb. 19, 2009); *Drew v. Equifax Info. Services, LLC*, C 07-00726 SI, 2010 WL 5022466 (N.D. Cal. Dec. 3, 2010); *Dixon-Rollins v. Citi Info. Solutions, Inc.*, CIV.A. 09-0646, 2010 WL 4939441 (E.D. Pa. Sept. 23, 2010); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 n. 3 (3d. Cir.1996); *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 419 (4th Cir. 2001); *Guimond v. Trans Union Credit Corp.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Smith v. Law Office of Mitchell N. Kay*, 124 B.R. 182, 185 (D. Del. 1990); *Johnson v. Dep’t of Treasury*, 700 F.2d 971, 985 fn. 39 (5th Cir. 1983); *Bryant v. TRW, Inc.*, 487 F.Supp. 1234, 1239 n. 7 (E.D. Mich. 1980); aff’d 689 F.2d. 72 (6th Cir. 1982); *Jones v. Credit Bureau of Huntington, Inc.*, 184 W. Va. 112,

399 S.E. 2d 694, 699 fn. 5 (1990).

**Defendant's Objections:**

Defendant objects to an instruction on emotional harm because the record does not support a causal relationship between anything that Citi did, and any emotional or economic harm.

Plaintiff's response: Defendant is not entitled to make unilateral determinations of causation. Emotional distress damages are indisputably recoverable under the FCRA, and it is up to the jury to determine whether Plaintiff suffered such damages as a result of Defendant's violation of federal law. The jury should therefore be instructed on what types of emotional distress damages it is permitted to award, and under what circumstances such an award can be made.

**Proposed Instruction No. 7.**

FCRA – Proof of Denial of Credit Not Required

Proof of a denial of credit based on Citi's inaccurate reporting is not necessary in order for you to award actual damages under the FCRA.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 7**

*Kim v. BMW Financial Services NA, LLC*, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015) ("a denial of credit is not a requirement to prove actual damages under the FCRA.") (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995) ( "[N]o case has held that a denial of credit is a prerequisite to recovery under the FCRA.")); *Johnson v. Wells Fargo Home Mortgage, Inc.*, 558 F. Supp. 2d 1114, 1132 (D. Nev. 2008) ("In the Ninth Circuit, a denial of credit is not a prerequisite to recovery under the FCRA. "); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1084 (D. Or. 2007) ("[I]t is well established that a plaintiff need not have suffered denial of credit to prevail on an FCRA claim.").

**Defendant's Objections:**

Defendant agrees that this instruction correctly states the law in broad terms. However, it would be improper to give this instruction because it has no basis in the record. It is error to instruct the jury on a legal theory that has no support in the record. *E.g., Roberts v. Spaulding*, 783 F.2d 867, 873 (9th Cir. 1986) ("A party is not entitled to have her theories presented to the jury unless they are both legally correct and supported by the evidence"). While it is conceptually true that "denial of credit" is not an element of the claim, in this

case all of Plaintiff's alleged damages stem from alleged denials of credit. His alleged economic damages are exclusively related to being denied credit or being denied credit on advantageous terms. His alleged emotional distress is exclusively based on the stress and hardship of being denied credit. No other form of damage has been disclosed. Hence, Plaintiff in this case must prove that he was denied credit because of Citi's conduct, because that is the only harm for which he is suing. Moreover, the instruction is misleading because it refers to "Citi's inaccurate reporting," a fact that has not been proven and is disputed.

Plaintiff's response: Defendant mischaracterizes Plaintiff's damages, and seeks to artificially restrict the same. Plaintiff's emotional distress damages are not "exclusively based" on the denial of credit. Instead, Plaintiff suffered emotional distress, embarrassment, frustration, and anxiety when Defendant refused, twice, to correct its inaccurate reporting after he submitted a dispute to the consumer reporting agencies. These damages are completely independent from a finding that Defendant's inaccurate reporting was a substantial factor in the denial of a home mortgage.

Finally, Defendant once again asks the Court to step outside of its authority and to hold that inaccuracy was not decided by the Ninth Circuit's opinion in this case. The Court is not permitted to do so. That Defendant's reporting was inaccurate has been established as a matter of law.

**Proposed Instruction No. 8.**

FCRA – "Empty Chair"

If you find that Citi failed to comply with any of its duties under the FCRA as I described them to you, there can be no other liable party in this civil action other than Defendant Citi.

Also, you may not assume that any other person, about whom you may have heard testimony, must compensate or already has compensated Mr. Gross in this civil action for any harm that you found was substantially caused by Citi's conduct.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 8**

*See* 15 U.S.C. § 1681o (limiting a defendant's liability to damages caused by that defendant's violation of the FCRA); *Texas Instruments Inc. v. Radcliff Material, Inc.*, 451 U.S. 630, 638 (1981) (no set-off or contribution under federal statutes unless statute itself or federal common law so provides); *Northwest Airlines, Inc. v. Transport Workers Union of America*, AFL-CIO, 451 U.S. 77, 90-91 (1981); Fed. R. Civ. P. 408; *Brim v. Midland Credit Management, Inc.*, 795 F. Supp. 2d 1255 (N.D. Ala. 2011); *McMillan v. Equifax Credit Information Services, Inc.*,153 F. Supp. 2d 129, 132 (D. Conn. 2001); *Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1058 (N.D. Cal. 2000); *Conner v. Howe*, 344 F. Supp. 2d 1164 (S.D. Ind. 2004); *Kerr v. Wanderor & Wanderor*, 211 F.R.D. 625, 632 (D. Nev. 2002); *Kay v. First Continental Trading, Inc.*, 966 F. Supp. 753, 754-55 (N.D. Ill. 1997); *Betts v. Equifax Credit Information Servs.*,245 F. Supp. 2d 1130, 1136 (W.D. Wash. 2003); *Agosta v. Inovision, Inc.*, Civ. No. 02-806 (E.D. Pa. June 12, 2003)

**Defendant's Objections:**

Defendant does not object to an instruction stating that the jury is not to consider compensation Plaintiff may have received from other parties – i.e., the second paragraph of the instruction. The first paragraph, however, while it seems to broach the same subject, is misleading. "If you find that Citi failed to comply with any of its duties under the FCRA as I described them to you, there can be no other liable party in this civil action other than Defendant Citi." This suggests that if Citi "failed to comply with any of its duties" then Citi should be "liable" for something when, under the FCRA, Citi is not "liable" for anything unless Plaintiff proves that Citi caused actual damages. Further, "any of its duties" is misleading because only some of those duties are actionable. *See* 15 U.S.C. § 1681s-2(c). The first paragraph is therefore misleading and adds nothing to the second paragraph. It should not be given.

Plaintiff's Response: While Plaintiff maintains that the instruction is accurate, not misleading, and a commonplace "empty chair" instruction, Plaintiff is amenable to discussion with the Court regarding the crafting of an instruction which would clearly inform the jury that no other entity or person may be liable for Defendant's actions.

**Proposed Jury Instruction No. 9**

FCRA – Definitions

Mr. Gross is a "consumer" who is entitled to the protection and benefits of the Fair Credit Reporting Act. The Defendant, Citi, is a "furnisher" and its conduct is regulated by the Fair Credit Reporting Act.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 9**

15 U.S.C. § 1681a (definitions).

**Defendant's Objections:**

The jury need not be instructed about statutory definitions. There is no dispute that Citi is subject to the FCRA and neither party intends to make an issue of these definitions at trial. Moreover, this instruction is misleading in its overbreadth. While it is broadly true that Plaintiff is entitled to the protection of the FCRA and that Citi is regulated by the FCRA, the vast majority of the "protections" and "regulations" afforded by the FCRA are not actionable and have nothing to do with this case. *See* 15 U.S.C. § 1681s-2(c) (furnisher may be sued only for failing to conduct investigation of certain disputes). Stating a broad definition like this improperly suggests a broad and amorphous standard to the jury, which is misleading. In order to make this definition not misleading, it would need to be supplemented with precise details of the regulated conduct at issue in the lawsuit, which would be duplicative of other instructions and unwieldy. Giving this instruction in *addition*

to the other instructions wrongly suggests some broader standard of liability may attach. This is improper and misleading.

Plaintiff's Response: Plaintiff again notes that Defendant's reticence for the jury to be instructed on the actual text of the statute it will be tasked with applying to the facts of this case is perplexing. This is a commonplace instruction regarding the entities involved in an § 1681s-2(b) claim. The statutory language in § 1681s-2(b) specifically refers to both the duties of the "furnisher" and the protections available to the "consumer." Both terms are specifically defined at § 1681a and carry significant meaning throughout the statute. Plaintiff is unsure how an instruction describing each of these terms to the jury would be "improper and misleading."

**Proposed Jury Instruction No. 10**

Negligence

I have instructed you regarding section of the FCRA that Mr. Gross alleges Citi violated. If you determine that Citi violated that section of the FCRA by its actions or inaction under the law as I instructed you, you must then determine if Citi was negligent. If you find Citi negligently violated the section of the FCRA I just described to you, then you must determine if Citi's conduct was a substantial factor in causing damages to Mr. Gross and, if so, what damages, if any, he suffered. I will instruct you on the law of the FCRA relating to damages shortly. If, on the other hand, you find that Mr. Gross did not establish that First Advantage's conduct was negligent, you must find for Citi.

The world "negligence," as used in these instructions, means failing to do something that a reasonably careful person would do under the circumstances existing at the time of the inaction or doing something that a reasonably careful person would not do under the circumstances existing at the time of the action.

Thus, as to Mr. Gross's claim that Citi failed to reasonably investigate his disputes, the standard of conduct by which you must judge the reasonableness of Citi's actions is what a reasonably careful person would do, under these circumstances, to investigate the issue disputed by Mr. Gross.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 10**

*See* 15 U.S.C. § 1681o; O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions-Civil, §153.10.

**<u>Defendant's Objections:</u>**

**Plaintiff's Response**:

**Proposed Jury Instruction No. 11**

Willfulness

I have instructed you regarding section of the FCRA that Mr. Gross alleges Citi violated. If you determine that Citi violated that section of the FCRA by its actions or inaction under the law as I instructed you, you must then also determine if Citi acted willfully.

A finding of "willfulness" does not require that you find that Citi had explicit knowledge that its actions violated the FCRA. Instead, "willfulness" exists if a furnisher acts with reckless disregard of a requirement of the FCRA. "Recklessness" exists where there is an unjustifiably high risk of harm that is either known or so obvious that it should be known to the furnisher.

Thus, as to Mr. Gross's claim that Citi failed to reasonably investigate his disputes, the standard of conduct by which you must judge whether Citi willfully failed to do so is whether Citi's actions involved an unjustifiably high risk of harm to Mr. Gross that was either known by Citi or so obvious that it should have been known by Citi.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 11**

*See* 15 U.S.C. § 1681n; *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 68-71 (2007) (Determining that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a).") (Defining "reckless" as "an unjustifiably high risk of harm that is either known or so obvious that it should be known.") (*quoting Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)); *Safeco*

*Ins. Co. of Am.*, 551 U.S. at 56-57 ("[Defendants] argue that liability under § 1681n(a) for willfully failing to comply with FCRA goes only to acts known to violate the Act, not to reckless disregard of statutory duty, but we think they are wrong.").

**Defendant's Objections:**

Citi objects to any instruction on willfulness because the record does not support it. It is error to instruct the jury on a legal theory that has no support in the record. *E.g., Roberts v. Spaulding*, 783 F.2d 867, 873 (9th Cir. 1986) ("A party is not entitled to have her theories presented to the jury unless they are both legally correct and supported by the evidence"). A party's conduct cannot be considered "willful" when it was consistent with an "objectively reasonable" interpretation of the FCRA. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007); *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 94 (2d Cir. 2021); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012). Here, the only alleged violation of the FCRA is Citi's alleged failure to supplement its factual investigation of Plaintiff's dispute with legal analysis about the meaning and effect of the Arizona anti-deficiency statute. Although the Ninth Circuit has now held (in 2022) that such analysis might sometimes be required, no such guidance existed in 2018, when Citi investigated the dispute. This Court granted summary judgment for Citi on this issue, consistently with every other jurisdiction that had then decided the question. *E.g., Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010); *Herrell v. Chase Bank USA, N.A.*, 218 F. Supp. 3d 788, 792-93 (E.D. Wis. 2016); *Van Veen v. Equifax Information*, 844 F. Supp. 2d 599, 608 (E.D. Penn. 2012). After the Ninth Circuit ruled, this Court expressed the view that the Ninth Circuit had made "new law." In this context, there cannot be any question that Citi's conduct was objectively reasonable. Hence, willfulness cannot be established. It would be error to instruct the jury on this legal theory.

**Plaintiff's Response**: Defendant is not entitled to unilaterally determine that the evidentiary record does not support a claim for willfulness. That is a question of fact for the jury. More importantly, willfulness is a part of Plaintiff's prima facie case and thus must be included in the jury instructions. *See* 15 U.S. Code § 1681n (establishing civil liability for willful noncompliance). Defendant's appeal to the Court's statements about the Ninth Circuit creating "new law" (despite the fact that the Ninth Circuit expressly couched its decision in an Arizona Supreme Court opinion published over three decades ago) is misplaced. If Defendant wished to exclude Plaintiff's properly pleaded willfulness allegation, it should have sought leave to file a motion for summary judgment. Jury instructions are an inappropriate forum to decide issues dispositive of a plaintiff's claims.

**Proposed Jury Instruction No. 12**

Punitive Damages

If you determine that Citi willfully violated § 1681s-2(b) of the FCRA, you may then also determine the amount of punitive damages to award Mr. Gross.

The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. You may consider a variety of factors in determining the appropriate amount sufficient to fulfill the purpose of punitive damages, including the violating party's net worth whether the violation was particularly reprehensible because it posed a substantial risk of harm to people

who are not parties to this case. (You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.)

Whether to award punitive damages, and the amount thereof, is left up to your discretion.

**AUTHORITY TO PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 12**

15 U.S.C. § 1681n; Ninth Circuit Model Civil Jury Instructions, 5.5 (modified); *Equal Employment Opportunity Comm. v. Autozone, Inc.*, No. CV 06-00926-PHX-SMM, at *2 (D. Ariz. Jan. 12, 2009) ("Plaintiff may introduce net worth evidence as one factor used to determine a punitive damage award."); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21-22 (1991) (approving the defendant's "financial position" as one factor used to determine a punitive damage award, although emphasizing it is not determinative); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n. 28 (1993) (stating that it is "well settled" that a defendant's net worth is a factor that is "typically considered in assessing punitive damages"); *Bains, LLC v. Arco Prods. Co.*, 405 F.3d 764, 777 (9th Cir. 2005); *Stavenjord v. Corrections Corporation of America*, No. CV 09-0354-PHX-DGC (LOA), at *15 (D. Ariz. Mar. 15, 2010) ("Punitive damages are awarded in the jury's discretion.") (citing *Smith v. Wade*, 461 U.S. 30, 54 (1983)).

**Defendant's Objections:**

Citi objects to any instruction on punitive damages because the statutory predicate

to awarding punitive damages – willful misconduct – cannot be established here. *See* 15 U.S.C. § 1681n. It is error to instruct the jury on a legal theory that has no support in the record. *E.g.*, *Roberts v. Spaulding*, 783 F.2d 867, 873 (9th Cir. 1986) ("A party is not entitled to have her theories presented to the jury unless they are both legally correct and supported by the evidence"). A party's conduct cannot be considered "willful" when it was consistent with an "objectively reasonable" interpretation of the FCRA. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007); *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 94 (2d Cir. 2021); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012). Here, the only alleged violation of the FCRA is Citi's alleged failure to supplement its factual investigation of Plaintiff's dispute with legal analysis about the meaning and effect of the Arizona anti-deficiency statute. Although the Ninth Circuit has now held (in 2022) that such analysis might sometimes be required, no such guidance existed in 2018, when Citi investigated the dispute. This Court granted summary judgment for Citi on this issue, consistently with every other jurisdiction that had then decided the question. *E.g.*, *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010); *Herrell v. Chase Bank USA, N.A.*, 218 F. Supp. 3d 788, 792-93 (E.D. Wis. 2016); *Van Veen v. Equifax Information*, 844 F. Supp. 2d 599, 608 (E.D. Penn. 2012). After the Ninth Circuit ruled, this Court expressed the view that the Ninth Circuit had made "new law." In this context, there cannot be any question that Citi's conduct was objectively reasonable. Hence, willfulness cannot be established and punitive damages cannot be awarded. It would be error to instruct the jury on a punitive damages claim.

**Plaintiff's Response**: Defendant is not entitled to unilaterally determine that the evidentiary record does not support a claim for willfulness. That is a question of fact for the jury. More importantly, willfulness is a part of Plaintiff's prima facie case and thus must be

included in the jury instructions. *See* 15 U.S. Code § 1681n (establishing civil liability for willful noncompliance). Defendant's appeal to the Court's statements about the Ninth Circuit creating "new law" (despite the fact that the Ninth Circuit expressly couched its decision in an Arizona Supreme Court opinion published over three decades ago) is misplaced. If Defendant wished to exclude Plaintiff's properly pleaded willfulness allegation, it should have sought leave to file a motion for summary judgment. Jury instructions are an inappropriate forum to decide issues dispositive of a plaintiff's claims.

## C. NON-MODEL INSTRUCTIONS REQUESTED BY DEFENDANT

### Proposed Jury Instruction No. 1

### Fair Credit Reporting Act – Elements of Claim

Plaintiff claims that Defendant violated the Fair Credit Reporting Act. On this claim, Plaintiff has the burden to prove the following elements by a preponderance of the evidence:

(1) That CitiMortgage reported inaccurate information about Plaintiff to the credit reporting agencies;
(2) That Plaintiff filed, with a credit reporting agency, a written notice of dispute with respect to the inaccurate information;
(3) That CitiMortgage received the written notice of dispute from a credit reporting agency;
(4) That CitiMortgage negligently failed to conduct a reasonable investigation of the notice of dispute;

(5) That CitiMortgage continued to report inaccurate information about Plaintiff because of its failure to conduct a reasonable investigation – in other words, that a reasonable investigation would have revealed that the disputed information was inaccurate; and

(6) That Plaintiff incurred actual damages after February 23, 2018, caused by the inaccurate information.

Source: 15 U.S.C. § 1681s-2(b)(1); 15 U.S.C. § 1681s-2(c); 15 U.S.C. § 1681o; *Makhani v. Wells Fargo Bank*, No. CV1909644ABMRWX, 2020 WL 13368789, at *4 (C.D. Cal. Mar. 13, 2020); *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018).

**Plaintiff's Objections:** Plaintiff objects to this instruction as written on the grounds that it is both incomplete and an inaccurate statement of the law of this case. The Ninth Circuit has already determined, as a matter of law, that Defendant's reporting was inaccurate, and there is no dispute among the parties that Plaintiff sent written disputes to the consumer reporting agencies which were received by Defendant thereafter. Thus, Plaintiff need not prove the first three elements of his FCRA claim; they have either already been ruled upon by the appellate court or they are undisputed.

**Defendant's Response**: In prior objections, Defendant has already noted that "inaccuracy" is not nor could have been already established by the Ninth Circuit. Defendant agrees that there is no dispute that written notices were sent and received, but this is still an element of the claim, and the instruction is important to guide the jury about the facts that are disputed. For example, Plaintiff is limited to recovering damages that may have been incurred after he sent a written dispute notice to the credit reporting agency. If the element of a notice is not listed, the jury may be confused as to the relevant time periods at issue.

**Proposed Jury Instruction No. 2**

**Fair Credit Reporting Act– Reasonable Investigation**

A "reasonable" investigation is one that would have been performed by a reasonably prudent person in the same or similar circumstances. An investigation need not be exhaustive to be reasonable; a furnisher may balance the costs and benefits of engaging in additional procedures. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate. Reasonableness is an objective standard.

Source: *Gorman v. Wolpoff & Abramson LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009); *Maiteki v. Marten Trans. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016); *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

**Plaintiff's Objections:** Plaintiff objects to this instruction as written on the grounds that it is incomplete. While a furnisher need not conduct an "exhaustive" investigation, the Ninth Circuit has explicitly held that a furnisher must "conduct at least a reasonable, non-cursory investigation" in order to comport "with the aim of the statute to 'protect consumers from the transmission of inaccurate information about them.'" *Gorman v. Wolpoff & Abramson, Llp*, 584 F.3d 1147, 1157 (9th Cir. 2009) (quoting *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1397 (9th Cir.1985)). Furthermore, "[b]y its ordinary meaning, an 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Gorman v. Wolpoff & Abramson, Llp*, 584 F.3d 1147, 1155 (9th Cir. 2009) (citing the Fourth Circuit's identical reasoning as "entirely persuasive). "Moreover […] a primary purpose for the FCRA [is] to protect consumers against inaccurate and incomplete credit reporting." *Id.*, at 1155-56 (internal citation omitted). "A provision that required only a cursory investigation would not provide such protection; instead, it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry." *Id.*, at 1156.

Plaintiff further objects to the phrase “a furnisher may balance the costs and benefits of engaging in additional procedures.” This statement is from a Tenth Circuit case and has not been adopted by the Ninth Circuit. Further, inclusion of this statement is unnecessary and would be prejudicial coming from the Court as a statement of the law. Defendant may argue that the costs of implementing more stringent procedures rendered its relevant procedures reasonable under the generic “reasonableness” standard set forth in the remainder of the instruction. There is no need for the Court to implicitly place its support behind such an argument by instructing the jury as requested.

**Defendant’s Response**:

Defendant agrees to work with Plaintiff to formulate a complete definition of reasonableness in this context.

Date: December 20, 2022

**PRICE LAW GROUP, APC**

By: */s/ David A. Chami*
David A. Chami, AZ #027585
david@pricelawgroup.com
*Attorneys for Plaintiff Marshall Gross*

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/Gregory B. Iannelli*
Gregory B. Iannelli, Esq. (#026549)
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Internet: gregory.iannelli@bclplaw.com
*Attorneys for Defendant CitiMortgage, Inc*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

*/s/Florence Lirato*